## COLLINS–DECKER CO. v. CRUMPLER.
### (No. 2578.)

(Court of Civil Appeals of Texas. Texarkana. May 31, 1922. Rehearing Denied June 15, 1922.)

1. **Sales ⬿89—Forfeit for nonperformance of sales contract not extended by implication to supplemental agreement.**

Where complete, written contract was made for sale of goods and a forfeit expressly placed to secure its performance alone, the forfeit will not be presumed extended to cover a subsequent supplemental agreement, for the sale and purchase of other goods not included in first contract based upon a different consideration.

2. **Sales ⬿54—Construction of unambiguous sales contract by parties not binding.**

Where goods sold were to be paid for upon completion of inventory thereof, and, on taking the inventory, the seller claimed that goods not mentioned in the original written contract of sale were in fact included in the sale and should be inventoried, the buyers' consent, to avoid dispute, that the inventory might proceed, with the intention of taking such goods, if they did not amount to a considerable sum, rather than have any controversy, *held* not a binding practical construction of the contract; the contract being unambiguous and hence not admitting of construction.

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Action by John P. Crumpler against the Collins-Decker Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Neyland & Neyland and H. L. Carpenter, all of Greenville, for appellant.

Clark & Sweeton and Crosby & Harrell, all of Greenville, for appellee.

HODGES, J. The appellee sued the appellant for the recovery of $1,000 as stipulated damages for the breach of a contract. The appellant is a private corporation, engaged in selling musical instruments in the city of Greenville, Tex. The appellee was at the time this controversy arose engaged in the

same line of business, in the same city. As the result of negotiations theretofore entered into the parties on the 12th of February, 1920, concluded and signed the following written contract:

"This agreement made this the 12th day of February, 1920, by and between Jno. P. Crumpler of Greenville, Texas, and the Collins-Decker Company, of Greenville, Texas, to wit:

"Jno. P. Crumpler has this day sold to the Collins-Decker Company his stock of pianos, sheet music, talking machines and records, record cabinets and player rolls and all musical merchandise on the following terms:

"Twelve straight secondhand pianos at one hundred dollars each ($100.00); one electrical piano for one hundred fifty dollars ($150.00), said electrical piano to be in good playing condition; also one studio model auto player piano for the sum of two hundred ($200.00); all talking machines at wholesale cost; also all sheet music, phonographs, records, player rolls and music cabinets and small goods at wholesale cost.

"It is agreed herein by and between both parties that Jno. P. Crumpler will discontinue any further piano business or talking machine business in Greenville or Hunt county for the consideration of this contract.

"It is agreed by and between both parties that the Collins-Decker Company will upon completion of the inventory pay to Jno. P. Crumpler cash in full."

This contract has been previously prepared by Collins, the president of the appellant company. When presented for signatures it was at Crumpler's instance amended by adding the following provisions:

"All talking machines, records and player rolls to be forty per cent. (40%) off the list last September; said J. P. Crumpler to retain the two desks, typewriter, safe and adding machine."

Immediately after the execution of the contract was completed it was agreed that each party would deposit with W. H. James, an official of the Commercial National Bank of Greenville, a check for $1,000. Thereupon both the appellant and the appellee executed checks payable to W. H. James, with the understanding that he was to hold them as a forfeit, and if either party failed to comply with the contract James was to turn the checks over to the other party. That part of the agreement relating to the forfeit was oral. Later, during the same day, the parties began taking an inventory of the stock of goods on hand. In the course of that work Crumpler insisted on listing as a part of the goods purchased by the appellant certain articles not described in the written contract, such as furniture, fixtures, some toy airplanes, a cash register, rugs, etc. There is some conflict in the evidence as to what objection was then made by Collins, who was acting for the appellant. Crumpler testified

that Collins objected only to the price of some of those articles, and finally consented that the inventory might proceed; while Collins and Decker testified that they objected because those articles were not a part of the purchase, but finally consented that the taking of the inventory might proceed. They intended, however, to take the goods if they did not amount to any considerable sum rather than to have a controversy. They deny that they ever agreed to take those articles. They also testify that when they found those items amounted to approximately $450 they determined not to take them. The inventory was completed that night, with the understanding that the trade would be closed the next morning. When the parties met some time in the forenoon of the next day a dispute arose between Crumpler and Collins as to what articles should be included in the contract; Collins contending that he was not required to take the furniture, fixtures, rugs and other articles above referred to, because they were not included in the written contract executed the day before. Crumpler contended that, although they may not have been included within the terms of that contract, it was his understanding that they were to go with the stock, and were to be a part of the purchase. According to Collins, he then offered to take all the goods specified in the written contract, and Crumpler unconditionally refused to complete the sale unless Collins would also take the furniture, fixtures, and other items above mentioned; that thereupon he (Collins) declared the deal off. Crumpler testified that while he insisted on his construction of the contract—that the furniture, fixtures, etc., were to go with the stock—that he did not then unconditionally refuse to proceed further with the contract, but asked for time to consult an attorney. He also testified that after consulting an attorney, on the next morning he approached Collins and offered to accept and comply with Collins' construction of the contract; that Collins replied that he would think about it, but that later Collins refused. Crumpler then filed this suit against the appellant to recover $1,000 as the stipulated damages.

In his charge the court instructed the jury that the contract did not by its terms include furniture, fixtures, ornaments, and other articles in the building not being kept for sale, but only included pianos, talking machines, sheet music, and such other articles as constitute a part of the stock of musical merchandise offered to the trade for sale. He further told the jury, however, that if the parties mutually treated and acted upon the contract as conveying all of the property in the building except that reserved in the last paragraph of the contract, that construction should be given upon the trial. He then gave the following instruction:

242 S.W.—22

"Now if you believe from the evidence that in preparing the invoice in evidence before you it was the intention of both the plaintiff and defendant to consider and treat all the property described in said invoice as a part of the subject-matter of the contract—that is, as the property covered and conveyed by the contract —then you will find for the plaintiff for the sum of $1,000, with 6 per cent. interest thereon from February 12, 1920."

In addition to the general charge, he gave the following:

"If you believe from the evidence on the day after the invoice in evidence before you was taken, at the time the controversy arose between the plaintiff and the defendant as to what property was covered by the contract, plaintiff requested the defendant to give him a reasonable time to seek legal advice as to such contract, and that he did advise with his attorney, and that within a reasonable time he offered to carry out the contract in accordance with the intention of the defendant, and that the defendant refused to so carry out said contract, you will find for the plaintiff," etc.

It thus appears that the court submitted two phases of the controversy upon which the jury might find in favor of the plaintiff.

In considering this case some doubts have arisen as to the propriety of treating it otherwise than as one to recover a penalty. The appellee testified that the checks placed in the hands of James were to be held as a forfeit. The stock of merchandise involved was small when compared to the sum to be "forfeited" for a breach of the contract of sale. No actual damages were alleged by the plaintiff below, nor were any shown upon the trial. So far as the record discloses, only nominal damages resulted from the refusal of the appellant to perform its part of the contract. It is by resolving the doubt in favor of the appellee, and treating this suit as one to recover as stipulated damages a sum of money equal to the face value of the checks placed as a forfeit, that a cause of action can be found in the pleading of the plaintiff. Collier v. Betterton, 87 Tex. 449, 29 S. W. 467; Eakin v. Scott, 70 Tex. 442, 7 S. W. 777; 1 Sutherland on Damages, § 283.

[1] Logically the first question presented is, Did the court properly instruct the jury in that part of the charge first above quoted? If this were a suit to recover damages to be measured by the actual injuries sustained by Crumpler because of the failure of the appellant to perform its part of the contract, the charge would probably be less open to objection. In such a suit the agreements to be considered in ascertaining the contract and the obligations breached would consist of all the mutual understandings and agreements made upon that occasion which related to the sale transaction. But where, as in this instance, a complete written contract is made, and a forfeit is by express agree-

ment placed to secure its performance alone, that forfeit cannot be extended by the court to cover a subsequent supplemental agreement made, unless it appears that the parties so intended. The mere making of a supplemental agreement for the sale and purchase of other goods, not included in the first contract, based upon a different consideration, would not alone compel the conclusion that the parties intended that the forfeit would be correspondingly extended. Stipulated damages like these, too nearly approximate the quantities of a penalty to be extended by implication beyond the express terms or plain meaning of the contract.

[2] Nor do we think the court could properly treat the completion of the inventory under the conditions mentioned as a practical construction of the contract by the parties and binding in this litigation. The court correctly informed the jury that the written contract did not include the articles in dispute. Hence there was no ambiguity in that provision. There was therefore no occasion to adopt any other construction. The rule which permits a resort to the construction adopted by the parties applies only when the contract is ambiguous and its meaning doubtful. There can be no reason for ignoring the plain terms of the contract, unless during the process of performance something has arisen by act of the parties which calls for an estoppel. Galveston, etc., Ry. Co. v. Johnson, 74 Tex. 256, 11 S. W. 1113; San Antonio St. Ry. v. Adams, 87 Tex. 125, 26 S. W. 1040; El Paso, etc., Ry. Co. v. Eichel (Tex. Civ. App.) 130 S. W. 922.

The issue as to a worthless check put up by the appellee has not been presented in such a manner as to require its consideration, and that question is not passed upon. Other assignments are overruled.

For the reasons discussed, the judgment is reversed, and the cause remanded for a new trial.