W. C. HENGER, Appellant and
Cross-Appellee,

v.

Lewis A. SALE, Appellee and
Cross-Appellant.

No. 3986.

Court of Civil Appeals of Texas.

Waco.

May 3, 1962.

Rehearing Denied May 24, 1962.

James R. Rodgers, and James W. Left-
wich, Dallas, Lloyd E. Elliott, Brundidge,
Fountain, Elliott & Bateman, Dallas, for
appellant.

Wm. Andress, Jr., Dallas, for appellee.

WILSON, Justice.

Two appeals—one by plaintiff as to relief
denied, and another by a defendant from

judgment against him—are presented in this corporate stockholder's derivative action. It is a jury case.

Plaintiff, Sale, who was an officer and director, and owned 35% of its capital stock, sued Bachman Center Corporation, its president, Henger, and two others of its directors, Wallace and Moore.

In one count, Sale alleged the individual defendants failed to take advantage of a written proposal made by a contractor to purchase earth from the corporation, but gave it away, thereby breaching their fiduciary duty as directors. On the jury verdict judgment for use and benefit of the corporation was rendered against Henger as prayed for in this count, and he appeals. A take-nothing judgment was rendered as to the other directors.

Plaintiff also alleged these directors depleted all corporate assets by paying to themselves (or other companies controlled by them) various sums from proceeds of sale of corporate assets in the guise of repayment of unauthorized loans made by them to the corporation, which payments were without plaintiff's knowledge or action of the board of directors, and for which restitution was sought. As to this count judgment was rendered for defendant Moore on the verdict, and for defendants Henger and Wallace after disregarding jury findings. Plaintiff appeals from this portion of the judgment.

### 1. Defendant's Appeal.

The corporation was organized to develop a shopping center in Dallas, and owned land on which it proposed to construct the center. A contracting concern, which intended to bid on a nearby airport construction project, delivered a letter to plaintiff Sale dated October 20, 1956, addressed to the corporation, proposing to excavate and remove from the center site 230,621 cubic yards of earth at 15¢ per yard, from such locations and in such manner as that excavation for the proposed center would also be accomplished. The proposal was conditioned upon obtain-

ing the airport contract, which was subsequently awarded to this contractor. The proposal recited that since "Bachman Center site grading plans are incomplete at this time it is difficult to pinpoint the exact location or method of excavation" but it was intended that excavation be to rough grade lines in accordance with the corporation's site plans; and since fill quantities were unknown, none were included in the proposal. Defendant Henger was then president of the corporation.

The board of directors adopted a resolution December 21, 1956, after Sale and another director "reported on negotiations" relating to the excavation proposal: "that the officers of this corporation be, and they are hereby authorized and directed to sell not to exceed 230,000 cubic yards of earth at a price of 15¢ per cubic yard on such terms and conditions as may be determined by the president of the corporation, and his execution of any such contract to be conclusive evidence of his approval of such terms and conditions." The by-laws provided the president should have general and active management of the corporation, "and see that all orders and resolutions of the board of directors are carried into effect," and that other officers should have such powers and duties as the board prescribed. Sale was a vice-president, as were the other defendants. Sale brought the proposal letter to the December board meeting.

Henger testified Sale was instructed to obtain a contract for presentation to the board at a special meeting for approval; that Sale was told the proposal was not clear enough for a contract; that the contracting firm "wouldn't give us a contract;" that a contract couldn't be made, and the firm "refused to give us a contract." He wrote no letter accepting the proposal, he said, because the board did not authorize him to do so, and "wouldn't have me accept the proposal." He testified the contractor "didn't want the dirt." His evidence was that the directors attempted to interest others in moving the dirt; that Sale reported "he could get someone who would pay maybe

10¢ a yard, and he was instructed to bring a proposal or contract. He failed to do it. Eventually we found a firm who would move it," without paying for it. Henger's testimony was that dirt needed by the contractor on the airport project was available and actually used from the excavation for airline buildings on that project. His evidence as to why no contract was effected was excluded, and his testimony that Sale was instructed to "get a contract" was stricken on objection that the resolution imposed this duty on the president. He testified as to details not included in the proposal which were considered necessary to be agreed upon.

Another officer-director, not a party, was not permitted to testify to what transpired at the December 21st meeting leading to the resolution, or what Henger said thereafter. Conversations of this director with the contractor's manager relating to the sale of earth were also excluded on plaintiff's objection that only the president "had been authorized to work this out." The court struck his testimony that "they were not able to get a contract," and sustained plaintiff's general objection to his testimony as to the reason.

The contractor's engineer testified to preliminary conversations with Sale, and delivery of the written proposal to him. Thereafter he and Sale "had many conversations" concerning the proposal, but he was not permitted to state why no dirt was then taken from the Bachman Center site. The court struck his testimony that the dirt was not needed. He testified that when he inquired of Sale about a written contract, he was told "they refused to give me anything in writing, signed, to assure me it would be made available." This contractor later used 100,000 yards of dirt from the corporation site for a freeway project, and he "paid the bankruptcy court" for it after his sub-contractor became bankrupt. There is no other evidence showing the nature of the latter transaction.

Plaintiff Sale did not testify concerning the proposal for removal or sale of dirt, although negotiation for other contracts relating to leases for the proposed project and preparation of preliminary planning were conducted by him. In 1958 all directors adopted a resolution approving, ratifying and confirming "all actions taken by the officers and directors" since December 21, 1956.

The jury found Henger did not act "in good faith and without assuming any position in conflict with" the corporation's interest in the transaction; that his "actions were taken without personal benefit to him", and he "failed to exercise ordinary care and diligence in the discharge of his duty" in the transaction. Based on this verdict, judgment for the value of 230,621 cubic yards of dirt at 15¢ per cubic yard was rendered against him.

■ Appellant urges there is no evidence to support the adverse findings or judgment. We agree. The resolution did not impose on Henger any exclusive duty or direction to sell earth or negotiate a contract. Those duties rested on all "the officers of the corporation", including plaintiff, who does not deny he was instructed to attempt to obtain a contract, and was unable to do so. As we construe the December 21st resolution, it authorized the president to determine, and approve terms and conditions of any contract to be negotiated, and to execute it. There is nothing to indicate absence of Henger's good faith, or existence of any conflict of interest. We find nothing to reflect lack of diligence or ordinary care on his part. We find no basis for computing damage to the corporation or liability of Henger. Cates v. Sparkman, 73 Tex. 619, 11 S.W. 846, 849; Patton v. Nicholas, 154 Tex. 385, 394, 279 S.W.2d 848, 853.

This portion of the judgment is reversed and judgment here rendered for appellant, Henger. If it should be determined we are required to pass on his other points, we would sustain all.

## 2. Plaintiff's appeal.

In 1954 plaintiff, Sale, a real estate dealer, obtained a one-year option to purchase a tract from the Slaughter Estate for $605,000, of which $105,000 was payable in cash. He began the promotion of a shopping center development on the land by procuring an architect's plans and obtaining a commitment for permanent financing conditioned on obtaining certain major leases from national concerns. At the end of the option term as extended, he had failed to obtain these leases, and sought to interest investors in advancing funds with which to exercise the option. Defendants Wallace and Henger each agreed to advance $26,250, and later defendant Moore and another advanced like amounts. Bachman Center Corporation was then organized, and thereafter Henger, Wallace and Moore advanced further sums for operating expense, interest costs, taxes and other interim requirements pending execution of leases being solicited from prospective tenants by Sale. All these advancements were evidenced by unsecured notes of the corporation. Sale was never successful in obtaining the necessary leases.

In 1958 the corporation sold the land for $700,000 cash, resulting in a net profit on the sale of $182,161.55. Bank loans and other expenses were first paid. Certain of the corporation's notes to Henger and Wallace ($35,045.68 each) were then paid. From the balance $15,670.43 was applied to each of the three original notes for $26,250 (which had been renewed) issued to Henger, Wallace and Moore, leaving a balance due thereon of over $30,000. After these disbursements $3000 remained as the corporation's sole asset.

On the trial Henger, Wallace and Moore contended all notes representing advancements by them to the corporation were loans, and that it was agreed by all interested parties prior to incorporation that these loans would be repaid, when the project was complete, out of permanent financing to be made by an insurance company. Henger was interested in obtaining the construction contract, Wallace the mechanical, and Moore the electrical contract for the proposed multi-million dollar shopping center building. Sale was to receive a commission for leases, contributing plans and the option. The additional sums required for capital stock subscription were then paid in by the incorporators.

Plaintiff's evidence showed he had expended personal funds of approximately $25,000 in promotion and travel expense during his negotiations for leases. These advances were not evidenced by notes, and he was not reimbursed by the corporation. He has a separate action pending for commissions claimed.

There was no resolution or other formal action of the directors authorizing execution of the notes to Henger, Wallace and Moore, and there was no such resolution or formal action authorizing payment of their notes. It appears that agreement to make payments to defendants was made by Wallace, Henger, Moore and another director at an informal club or luncheon meeting; or at a directors' meeting not recorded in the minutes, which Sale did not attend, or at which he did not vote for or consent to such payments. The jury found that "all directors" did not know of or consent to the loans made to the corporation by Henger and Wallace; but all did know of and consented to such loans by Moore, and that no director objected to any of the loans. On motions the court rendered judgment against plaintiff and for Moore on the verdict; and for Henger and Wallace after disregarding the findings. No finding was elicited concerning the manner of authorizing payment to defendants. He contends advancements by defendants were contributions of risk capital, and not loans as they contend. We do not consider it necessary to decide this question.

The evidence does not clearly show the circumstances under which the board of directors authorized payments to Henger, Wallace and Moore, but it does reflect that Sale did not vote for it. There were only

four directors besides Sale: The three defendants and one other. If the authorization was at a special meeting, the record indicates it was called without compliance with provisions of the by-laws. If it was at a regular or special meeting not shown by the minutes, a quorum was not present without counting Henger, Wallace and Moore. San Antonio St. Ry. Co. v. Adams, 87 Tex. 125, 26 S.W. 1040, 1043. See Art. 2.35 Business Corporation Act, V.A.T.S.

Corporate officers and directors are not disqualified from dealing with the corporation, but such transactions are subject to strict scrutiny, and the burden is on the officers and directors to establish their fairness. Popperman v. Rest Haven Cemetery, Inc., Tex.Sup., 345 S.W.2d 715, 717. The directors occupy the position of fiduciaries toward the company. Paddock v. Siemoneit, 147 Tex. 571, 218 S.W.2d 428, 431.

If a transaction in which a director is personally interested may be authorized only by his vote, a vote of all stockholders is ordinarily required to authorize it. Scott v. Farmers' & Merchants' Nat. Bank, 97 Tex. 31, 75 S.W. 7, 9, 104 Am.St.Rep. 835; Davis v. Nueces Valley Irr. Co., 103 Tex. 243, 126 S.W. 4, 6; Greathouse v. Martin, 100 Tex. 99, 94 S.W. 322; 3 Hildebrand, Texas Corporations, Sec. 698, p. 61; 1 Mod. Bus.Corp.Act Ann.(1960) Sec. 37, Comm. 3.01(5) p. 629; Lattin, Corporations (1959) Sec. 4, p. 221; Ballentine, Corporations (1946) Sec. 45, p. 131; Stevens, Corporations (1949) pp. 570–574; Lebowitz, Director Misconduct & Shareholder Ratification in Texas, VI Baylor L.Rev. 4. The decisions on this subject are analytically summarized in 3 Fletcher, Encyc. Corporations, (Perm. Ed., rev. 1957) Sec. 908, pp. 322–326.

In our opinion defendants did not discharge their burden of showing the payments to themselves did not constitute an unauthorized preference of themselves, as unsecured creditors or otherwise. Whether all directors, including Sale, knew and consented to "loans" to the corporation is not determinative, nor could the finding constitute a basis here for judgment on the verdict. There is no showing that a quorum of disinterested directors ratified payment of defendants' claims. We are required to render here the judgment the trial court should have rendered. In our opinion no final judgment could properly be rendered on the verdict. To avoid circuity this portion of the judgment is reversed and remanded. Costs are taxed equally between plaintiff and defendants.