**STATE ex rel. WILKINSON et al. v. SELF, Mayor, et al.**

No. 11566.

Court of Civil Appeals of Texas. San Antonio.

Nov. 21, 1945.

Rehearing Denied Dec. 19, 1945.

Sidney P. Chandler, of Corpus Christi, Geo. W. Barcus and Grover Sellers, both of Austin, for appellants.

Kleberg, Eckhardt, Mobley & Roberts, Tarlton & Koch, and Hodge Thompson, all of Corpus Christi, for appellees.

NORVELL, Justice.

This is an action in the nature of quo warranto brought by the State of Texas upon the relation of G. W. Wilkinson and others, in which the validity of the annexation of certain territory to the City of Corpus Christi is challenged. The territory involved lies south of and adjacent to the city limits of Corpus Christi and is embraced within the boundaries of Nueces County Water Improvement District No. 1.

Trial was to the court without a jury. Judgment was rendered for the city and findings of fact and conclusions of law were requested and filed. Appellants made certain requests for additional findings which were refused by the trial court. This matter will hereinafter be discussed.

There are two methods prescribed whereby the City of Corpus Christi may annex additional territory. The City is operating governmentally under the Home Rule Amendment, Article 11, Section 5, of the Constitution of Texas. In accordance with the provisions of said constitutional amendment and the enabling act relating thereto, Articles 1165 et seq., Vernon's Ann.Civ. Stats., the City, apparently in 1939, adopted the following charter provision:

"When a majority of the resident voters of any territory adjoining the City, regardless of its area, shall petition the City Council for admission into said City, the Council may order an election within the territory proposed to be admitted, and if, at such election, a majority of the voters shall vote in favor of becoming a part of the City, the Council, if it deems such action to the best interest of the City, may, by ordinance, receive the same as part of the City. Such election shall be held in conformity with the general laws of the State regulating elections for submitting questions to the qualified voters of the City. But, if there be no resident voters within the territory proposed to be admitted, the persons owning property within such territory may contract with the City, by instruments in writing, duly executed and acknowledged by all persons owning real property within such territory, that said territory shall be admitted into said City; whereupon the City Council, may, if it deems such to the best interest of the City, admit such territory upon such terms and conditions as the Council may require, and from thenceforth such territory so admitted shall be part of the City. Any territory admitted into the City shall bear its proportionate part of all taxes levied by the City and its inhabitants shall have all the privileges and be subject to all the duties of other inhabitants of the City.

"Territory adjoining the City, comprising a local improvement district or a portion thereof, with outstanding indebtedness, may be admitted in the same manner as other territory; provided, however, that the City Council shall first submit to the property tax-paying voters the question whether such debt, or any part thereof to be determined by the Council, shall be assumed by the City."

The Forty-first Legislature (1929) passed an Act which also relates to the annexation of adjacent territory by a City acting under and by virtue of a charter adopted under the Home Rule Amendment. Acts 1929, 41st Leg. p. 251, ch. 110, Article 1182a, Vernon's Ann.Civ.Stats.

Section 1 of this Act reads as follows: "Sec. 1. Whenever the City Commission of any City within this State, acting under and by virtue of any Charter adopted under Home Rule Amendment Article 11, Section 5, of the Constitution of this State, shall initiate or order an election for the extension of the territorial limits of said city, to be submitted to the legally qualified property tax paying voters residing with-

in the territorial limits of said city, to determine whether or not the adjacent territory desired to be annexed shall be included within the territorial limits of said city, said City Commissioners shall at the same time order an election to be held at some convenient place within said city limits, so that the legally qualified property tax paying voters residing in the territory contiguous to said city and proposed to be annexed, may appear and cast their vote for the purpose of determining whether a majority of the legally qualified property tax paying voters residing in said territory proposed to be annexed, favor the annexation of said territory proposed to be annexed."

It will be seen that in certain particulars the charter provisions are different from those prescribed by the statute. It is stated in appellees' brief that the procedure followed by the City with reference to the disputed annexation was that prescribed in the charter, except where there was a conflict between the charter and the statute, in which instances the provisions of the statute were followed. This raises the first question involved upon this appeal, namely, did the adoption of the charter amendment by the City of Corpus Christi supersede and render ineffectual the method of annexation permitted by the Legislative Act of 1929?

We hold that it did not. The Home Rule Amendment did not deprive the Legislature of the power to provide and enact general laws relating to municipal affairs. In fact, this power was carefully preserved. City of Beaumont v. Fall, 116 Tex. 314, 291 S.W. 202; Dry v. Davidson, Tex.Civ. App., 115 S.W.2d 689, writ refused. Therefore, the Legislature could lawfully prescribe and authorize a procedure whereby a Home Rule City could annex additional adjacent territory.

The governing body of a City obviously could not and can not repeal a valid Act of the Legislature. Further, we do not believe such intention can be gathered from the charter provision relating to annexation. Rather, it would be more reasonable to say that the City by its charter provision sought to set out and prescribe a method for annexing adjacent territory in addition to that provided for by the Legislative enactment. We are not called upon in this case to determine the validity of those parts of the charter which differ

as to procedural matters from those contained in the statute. We hold that the statutory provisions are in full force and effect and applicable to the annexation of territory here involved. City of Fort Worth v. State ex rel. Ridglea Village, Tex.Civ.App., 186 S.W.2d 323.

This holding eliminates a substantial part of appellants' complaint of the trial judge's refusal to file additional findings and narrows the question involved to whether or not there was a substantial compliance with the provisions of Article 1182a in effecting the annexation of the adjacent territory involved.

The trial judge found that:

On November 8, 1944, a petition, signed by persons residing within the territory sought to be annexed, was presented to the City of Corpus Christi, requesting that such territory be annexed to the City.

On December 2, 1944, the City Council concluded that the petition had been signed by a majority of the legally qualified voters of the territory to be annexed and ordered an election to be held at the Menger School, a place within the then limits of the City of Corpus Christi, at a point approximately adjacent to Nueces Water Improvement District No. 1. This election was one for the voters residing within the territory sought to be annexed and was held at a convenient place for said voters. This election, held on December 21, 1944, resulted in a vote of 276 in favor of annexation and 163 votes against annexation.

On December 28, 1944, in pursuance to order of the City Council and notice, an election was held in the City of Corpus Christi, which resulted in a vote of 401 in favor of annexation to 5 against annexation.

The trial judge concluded as a matter of law that as a result of the proceeding above outlined, the territory involved was legally annexed and became a part of the City of Corpus Christi.

Since Article 1182a does not prescribe the means or methods whereby the governing body of a city may initiate or order an election, it follows that as to these matters the provisions of the City Charter are controlling. The statute becomes applicable when an election is initiated or ordered by a City Commission or Council acting under a Charter adopted under the Home Rule Amendment. Allen

v. City of Austin, Tex.Civ.App., 116 S.W. 2d 468, writ refused.

█ The Charter of the City of Corpus Christi provides that proceedings relating to the annexation of adjacent territory shall be instituted by means of a petition. Appellants contend here that the petition was not executed or signed by a majority of the resident voters of the territory sought to be annexed to the City. As above pointed out, the trial judge found that the City Council determined that a majority of the legally qualified voters had signed the petition. The judge also con- cluded that this finding on the part of the City Council was made in good faith.

Appellants made numerous requests for additional findings upon the theory that it was the duty of the trial court to deter- mine as an original proposition whether or not a majority of the residents of the territory sought to be annexed, who were legally qualified to vote, had signed the petition.

In this particular, the trial court found upon the ultimate fact issue in the case, which was: Did the City Council in good faith find that a majority of the residents qualified to vote of the territory signed the petition? This was the issue that the trial court was called upon to decide rather than the question of whether or not in law and in fact a majority of said residents had signed the petition. Under the char- ter provision here involved, the petition was a step preliminary to the election it- self. In some instances a petition may be a species of an election, but that is not true in this case. No infirmity or illegality appears upon the face of the petition. Ob- viously, the question of whether or not a sufficient number of qualified persons had signed the petition can not be determined from an inspection of the petition itself. This must be determined by an investiga- tion of facts and circumstances wholly out- side the petition, such as poll lists, tax rolls, etc. The duty to make this investigation and to make a determination as to the suf- ficiency of the petition rests in the first instance upon the City Council, and in the absence of a showing of an abuse of dis- cretion or want of good faith, this de- termination is final and binding when called into question in a judicial proceeding.

In Scarborough v. Eubank, 93 Tex. 106, 53 S.W. 573, 574, the Supreme Court said:

"The object of a popular election is that the will of the greater number of the voters may prevail. This greater number may be a plurality or a majority in a greater or less degree, as the law may pro- vide for the particular case. Hence the important matter in every election is that the will of the voters should be fairly ex- pressed, correctly declared, and legally en- forced. Compared to this, the question as to the manner and time of ordering the election is of trivial moment. Ordinarily, when elections are to be held which recur at stated periods (such as those for the election of officers to administer the gov- ernment), it is made the duty of certain officials to call the election without action on part of any person. But in all elections of a local option character (such as for prohibiting the sale of intoxicating liquors, to prevent the running at large of live stock, the removal of county seats, and the incorporation of towns and cities) it is es- sential, in order to give effect to the laws which provide for such elections, that some officer, board, or tribunal should be empowered to order the election, and that it should be made a duty so to order it upon the occurrence of certain conditions,— usually the presentation of a petition, signed by a certain number of legal voters, freeholders or taxpayers, according to the nature of the matter upon which the vote is to be taken. According to the varying views of legislative bodies, these numbers are sometimes few and sometimes many. For example, in case of an election to remove a county seat, in some of the states it seems that the petition must be signed by a majority of the voters. The number ought to be sufficient to give some assur- ance that there exists a desire on part of a large proportion of the voters for the change to be voted for, and that there is a probability that, in case the election be ordered, the proposition will carry. An election ought not be ordered when the measure is likely to be defeated, and a useless expense incurred. This is the foundation of the policy which determines the number of applicants necessary to pro- cure an order for an election. Hence the legislature might deem it a matter of no serious moment that the officer or tribunal to whom the duty of ordering the election is intrusted should make a mistake as to the qualification of one or more of the signers, and should expressly or impliedly

make their decision as to the competency of the petitioners final, at least after the election has been held. It would seem more politic to make the determination of the county judge conclusive than to permit the question to be inquired into upon a contest, and the election to be annulled, after a legal majority have voted for the change sought to be accomplished. Accordingly the weight of authority, as it seems to us, is against the right to call in question the qualifications of the signers to the petition in a contest of the election."

Appellants contend that as Scarborough v. Eubank was an election contest, the rule stated is not applicable to an action in the nature of quo warranto. However, in State ex rel. Thompson v. Lester, 50 S.W. 2d 386, 387, the Fort Worth Court of Civil Appeals cited the Scarborough case as controlling and said: "We believe that it is immaterial that the Scarborough v. Eubank case was a suit to contest an election while the present suit was a quo warranto proceeding, since the question in each of the cases was essentially one of jurisdiction of the county court to order the election."

The Supreme Court refused a writ of error in the Lester case, which we regard as an authority squarely against appellants' contention asserted here.

Appellants contend that proper notice of the election was not given. It appears that the ordinance directing that elections be held was duly passed by the City Council in accordance with charter provisions. In conformity with the provisions of the election order, notices of election were posted at three places within the territory to be annexed, on December 6, 1944, and on December 11, 1944, election notices were posted within each of the 21 voting precincts of the City of Corpus Christi. The ordinance of the City Council, dated December 2, 1944, calling for an election in the territory to be annexed on December 21, and an election within the City of Corpus Christi on December 28, was published in the Corpus Christi Caller and Times on the 5th and 12th days of December, 1944.

As to notice of election, Article 1182a (Sec. 3) provides that, "Said ordinance for the election must provide for separate elections and must be issued and public notice given thereof as in other city elections * * *." This provision, when applied to

the facts of this case, is somewhat ambiguous in that it does not appear that there is a uniform rule or law applicable to notice "as in other city elections."

The provision of the Charter of the City of Corpus Christi is that "In all other regular elections, except the one provided for in the two preceding sections (election of Mayor and City Commissioners) twenty days' notice thereof shall be given by proclamation of the Mayor, published in some daily paper in the City of Corpus Christi."

The elections here involved were special elections and it can not be said that the charter provision above quoted has application to these elections without doing violence to the language employed by the charter as the term "regular" is uniformly used to designate and distinguish one class of elections from another class, designated as "special elections."

Appellants mention Article 1171 (part of Chapter 13, relating to Home Rule), Vernon's Ann.Civ.Stats., which provides that "No ordinance shall be passed submitting an amendment or amendments (to a charter) until twenty days' notice has been given of such intention by publication for ten days in some newspaper published in said city. * * *" They also call our attention to Article 978, Vernon's Ann.Civ.Stats., which is a part of the general law relating to cities, towns and villages, which provides for thirty days' notice for the election of municipal officers.

On the other hand, appellees refer us to Article 704, Vernon's Ann.Civ.Stats., which relates to bond elections and suggest that as the elections here involved relate to an assumption of the bonded indebtedness of Nueces County Water Improvement District No. 1, by the City of Corpus Christi, this article might have some application. This article provides for publication of notice for two successive weeks in a newspaper of general circulation prior to the election. It is also stated in the article that the provisions thereof "shall control over any city charter provisions to the contrary."

Other examples of statutory provisions for election notices might be given. The above are deemed sufficient to demonstrate that there is no uniform statutory rule relating to "other city elections." Article 1182a does not provide that notice shall

be given as is required for a "regular" election, and the Corpus Christi Charter is silent as to notice of special elections. We think the statute should be given effect as providing for a reasonable notice, Countz v. Mitchell 120 Tex. 324, 38 S.W.2d 770, which was given in this case. Furthermore, if it be considered that the notices here involved were in any way defective, we believe the following statement from Wallis v. Williams, 50 Tex.Civ.App. 623, 110 S.W. 785, 787, is applicable here, viz:

"There is no merit in the ninth assignment. The appellees were not required to show that notices of the election were posted for the time and in the manner required by law. The failure to post the notices would not render a county seat election void, when all the evidence shows that the time and places for holding the election was generally known throughout the county, and there is no evidence that any voter failed to participate in the election for want of notice of the time and places at which election would be held, and nothing to create even a suspicion that the failure to post notices, if there was such failure, in any way affected the result of said election. Buchanan v. Graham, 36 Tex.Civ.App. 468, 81 S.W. 1237."

■ Article 1182a provides for the issuance of an order for "an election to be held at some convenient place within said city limits, so that the legally qualified property tax paying voters residing in the territory contiguous to said city and proposed territory to be annexed, may appear and cast their votes * * *." The election at which the voters residing within the area sought to be annexed cast their ballots was held in accordance with the provisions of the statute above set out. Appellants contend that the part of the statute relating to the selection of a voting place is unconstitutional, for the reason that it conflicts with the provisions of Article 6, Section 3a, of the Constitution of Texas, which provides that in any election for the purpose of issuing bonds or otherwise lending credit, or expending money or assuming any debt, "all electors shall vote in the election precinct of their residence." In other words, appellants contend that as the polling place was outside the territory sought to be annexed, the election was void.

It is suggested by appellees that as in the election held for the voters in the territory sought to be annexed there was only one voting precinct provided for, said voting precinct could be regarded as comprising both territory involved and the place designated for the casting of the ballots. This is perhaps a tenable view. In any event, we are of the opinion that the election can not be declared void simply because the polling place was situated outside the territorial boundaries of the area sought to be annexed, in the absence of a showing of fraud, unreasonable location of the polling place, or proof that such location probably affected the outcome of the election.

Prior to its amendment in 1921, Article 6, Section 2, of the Constitution of Texas, contained a provision similar to that now embodied in Article 6, Section 3a, with reference to electors voting in the precinct of their residence. 16 Tex.Jur. 29. A like provision is embodied in Article 2936, Vernon's Ann.Civ.Stats.

The purpose of the provision was stated in Ex parte White, 33 Tex.Cr.Rep. 594, 28 S.W. 542, 544, as follows: "The object of a provision of this character is to insure a fair and honest election, by requiring each voter to cast his ballot at the same place where his neighbors voted, and those to whom his qualifications were best known and by whom, if necessary, they could be challenged. Cooley, Const.Lim. 754. Hence, the inhibition is against a voter voting at any other poll than that of his own voting precinct; that is, the precinct of his residence. Indeed, this inhibition was the very purpose of the constitutional provision under discussion. Under the prior constitution, of 1869 (article 6, § 1), a voter could vote in any voting precinct in the county of his residence, but the evils resulting from the exercise of this right became so manifest that they led to the adoption of the present provisions."

As above pointed out, in the election of December 21, 1944, there was but one voting precinct. All voters cast their ballots at one polling place. There is no indication that the location of the polling place in any way prevented a true and correct expression of the will of the voters. We consequently hold that said election was not void. Davis v. State, 75 Tex. 420, 12 S.W. 957; 16 Tex.Jur. 31, §§ 23, 24.

■ It is also asserted by appellants that the elections here involved were not carried by the requisite number of

votes. It is insisted that a majority of those actually voting at the elections is insufficient under the provisions of Article 1882a, which appellants contend require that the election carry by an affirmative vote in excess of fifty per cent of the number of citizens qualified to vote and who reside in the territory sought to be annexed and again in the City of Corpus Christi. The parts of Article 1182a applicable to the point here raised are as follows:

"If, at any election to be held under the provisions hereof, a majority of the legally qualified tax paying voters residing within the territorial limits of such city, and those residing within the territorial limits proposed to be annexed, shall each vote in favor of the annexation of such additional territory, said city shall thereby assume all of said bonded indebtedness and flat rates on the territory thus annexed. * * *

"Said ordinance for the election must provide for separate elections and must be issued and public notice given thereof as in other city elections, and provided further that if a majority of the legally qualified property tax paying voters residing within the territorial limits of said city or if a majority of the legally qualified property tax paying voters residing within the territory desired to be annexed shall not be in favor of such annexations then such annexations shall not be made. "

From a reading of the statute it appears clear that the Legislature intended that the elections provided for by the article settle the question of annexation by providing that if a majority of the legally qualified taxpaying voters be in favor of annexation, then the adjacent territory shall become part of the City, while if a majority of the legally qualified taxpaying voters be against annexation, then such annexation shall not be made.

If appellants' construction of the statute be accepted, the elections provided for therein would in many instances settle nothing. It is common knowledge that in most elections, all those legally qualified to vote do not actually cast their ballots. If upon a vote of a portion of those legally entitled to vote (which is the situation in most elections) the City Council were unauthorized to settle the proposition, then by what means could said body determine whether the majority of those qualified to vote were in favor of annexation or

against it? Is the citizen who does not vote to be considered as being for annexation or against it? In our opinion the word "voter" as used in the excerpts from Article 1182a, above quoted, means those who actually cast a legal vote at the elections provided for by the Article. Shaw v. Lindsley, Tex.Civ.App., 195 S.W. 338, and authorities therein cited.

It appears that on November 29, 1944, a petition was presented to the County Judge of Nueces County, which had for its purpose the organization of a city or town under the provisions of Article 966, Vernon's Ann.Civ.Stats. The proposed corporation was to be known as "Nueces City" and embraced substantially the same territory as that which the City of Corpus Christi sought to annex by the proceedings which its City Council instituted by its order of December 2, 1944.

The trial judge found, with reference to this petition, as follows:

"I find that no hearing was had on said petition to determine the sufficiency of the signatures as to whether or not fifty (50) or more qualified voters had signed the petition, but that on the face of the petition there were several apparent duplications of handwriting of signatures and that action was withheld on said petition until the Judge could conduct a formal hearing and determine the sufficiency of signatures.

"I find that prior to the holding of the city election, one of the leaders in the movement to incorporate Nueces City publicly announced that said petition had been withdrawn and abandoned and that it had served its purpose of preventing annexation of certain areas desired to be excluded.

"I find that the proponents of Nueces City made no attempt to secure the call of an election for the purpose of voting on the incorporation of Nueces City subsequent to November 29, 1944, and prior to March 29th, 1945; that said proposal was, as a matter of fact, completely abandoned by the proponents."

The findings of the trial judge were to the effect that no official action was taken by the County Judge upon the Nueces City petition. This finding has support in the evidence. The record here discloses no order rendered by the County Judge with reference thereto. We hold that the mere filing of a petition with the County Judge, which did not result in the procuring of

an order for an election upon the question of incorporation, Article 1136, Vernon's Ann.Civ.Stats., did not deprive the City of Corpus Christi of the jurisdiction or authority to annex the territory involved, in accordance with the provisions of Article 1182a.

We have concluded that appellants' points do not disclose a reversible error, and the judgment appealed from is accordingly affirmed.