**HYATT et al. v. MERCURY LIFE & HEALTH CO. et al.**

No. 11714.

Court of Civil Appeals of Texas.
San Antonio.

March 12, 1947.

Rehearing Denied April 2, 1947.

See also 202 S.W.2d 325.

W. J. Rogers, of San Antonio, for appellants.

Green & Rosson, of San Antonio, for appellees.

NORVELL, Justice.

This is an appeal from an order granting a temporary injunction which restrains Leonard Hyatt, H. C. Plumly, Mrs. Marie Prozanski, H. W. Vordenbaum and C. B. Fulton from claiming or asserting that they are the duly elected directors or officers of Mercury Life and Health Company, and interfering with the business management and operation of said company and the performance of the duties of officers and directors in said company by William E. Hughes, Mrs. Edith C. Hughes, J. A. Lott, Hubert W. Green and William .E Hughes, Jr.

The application for the temporary injunction was filed by William E. Hughes, Mrs. Edith C. Hughes and J. A. Lott, three of the five hold-over directors of the company, which was also named as a party applicant in its corporate capacity. The final relief prayed for by said applicants was the issuance of a final injunction perpetuating the restraints imposed by the interlocutory order.

The controversy centers around a certain meeting which took place at the company's main office in the Majestic Building, San Antonio, Texas. Appellants, Hyatt and others, claim that this meeting was the annual policyholders' meeting of the insurance company and that they were elected members of the Board of Directors of said Company at said meeting.

Hughes and the others above named with him were the members of the Board of Directors selected at the January, 1946, policyholders' meeting, with the exception of William E. Hughes, Jr., who was chosen to fill a vacancy which occurred between policyholders' meetings.

The trial court filed findings of fact and conclusions of law, and from said findings and the undisputed evidence, we make the following statement:

Mercury Life and Health Company is an insurance corporation doing business under the provisions of Chapter 6, Title 78, Revised Statutes of 1925. This Chapter was repealed by the 41st Legislature, Acts 1929, 41st Leg., 1st C.S. p. 90, ch. 40, § 18, as amended by Acts 1929, 41st Leg., 2d C.S. p. 99, ch. 60, § 1, Article 4860a—18, Vernon's Ann.Civ.Stats. The repealing Act, however, contained a proviso that "such repeals and the provisions of this Act shall not apply to or affect any Company or Association of this State now doing business under the laws repealed, and they shall continue to be governed by the regulatory provisions of such laws." Article 4860a—18.

Article 4789, R.S.1925, relating to the powers of insurance corporations organized in accordance with the terms of Chapter 6, Title 78, provides that:

"Such corporations shall issue no certificate of stock, shall declare no dividends, shall pay no profits; and the salaries of all officers shall be designated in its by-laws. Such by-laws shall provide for annual members' meetings, in which each member shall be entitled to vote, only in person, the amount of insurance held."

The by-laws of the Mercury Company contain the following pertinent provisions:

"The Board of Directors of the Company shall consist of not less than three nor more than eleven members and shall be elected by the members at each annual meeting to hold office for one year or until their successors shall have been duly elected and qualified. * * * (Article III.)

"All persons to whom policies or certificates of membership are issued or granted shall from the effective date thereof, become members of this Company or Corporation and shall remain as such members only so long as their policies are in full force and effect. * * * (Article V.)

"The annual meeting of the members shall be held in the Home Office of the Company on the third Monday of January each year at two o'clock P. M. Regular meetings of the Board of Directors shall be held each year immediately following the adjournment of the Annual Members' Meetings. * * * Notice of all regular and special meetings of the members will be

mailed to each member in good standing ten days or more in advance of the date of such meetings. (Article VII.)

"At all meetings a majority vote of members present in person shall determine and render effective any matter voted upon. * * * (Article VIII.)"

Although the Mercury Company had about 50,000 policyholders, the officers of the company sent out notices to only about 1000 members, calling attention to the annual meeting of policyholders to be held at the company's main office on January 20, 1947, at 2 o'clock P. M. Parenthetically, we here point out that appellees as holdover directors are in no position to challenge the legality of the meeting by reason of a lack of proper notice.

Some eighty-eight persons or more assembled at the company's office at the time designated. The trial judge stated that "it is impossible from the evidence to determine exactly how many persons attended said meeting, or how many of all of the persons who may have attended such meeting were policyholders or members, and if members, the kind of policy and the amount of insurance held. However, evidence was introduced by respondents showing 98 policyholders were present and petitioners introduced evidence showing 44 policyholders present and testified that by reason of confusion prefailing such records could not be completed." Mrs. Marie Prozanski was chosen as chairman of the meeting. Two slates of candidates were nominated for directors of the company; one headed by Mr. Leonard Hyatt and the other by Mr. William Hughes. Mr. Joe Burkett, a practicing attorney, employed by Mrs. Prozanski, was present and, at her request, made a count of the vote and announced that the Hyatt slate of candidates had received 46 votes as against 42 votes for the Hughes ticket. The chairman adopted the result of the canvass and declared that Hyatt and his associates had been elected directors of the company. The policyholders' meeting then adjourned.

Upon the adjournment of the meeting the Hughes board of directors, the holdover board, refused to surrender possession of the company's offices, with the result that until court intervention the said offices were occupied by representatives of the hold-over board as well as by members and representatives of the new board selected by the meeting over which Mrs. Prozanski presided.

The disputed meeting was attended by considerable confusion and disorder, however, the trial judge stated that he did "not find that such noise, confusion, disorder and violence as existed prevented the holding of a lawful meeting or prevented persons present from voting thereat." The trial judge further found that "the count was fair and that there was no fraud or attempted fraud on the part of those who put the questions, took the votes and counted the votes."

The basis for the temporary injunction is the finding that "the result of what occurred (at the meeting) was that there was in effect no election at all, because of the failure to determine whether those present attending and voting were policyholders or members, and the amount of insurance held by them."

The trial court concluded as a matter of law that "Leonard Hyatt, H. C. Plumly, Mrs. Marie Prozanski, T. H. W. Vordenbaum, and C. B. Fulton, were not elected directors at said meeting because it was not determined and could not have been determined at said meeting how much insurance was held by the persons who voted, and the law requires that the policyholder or member shall vote the amount of insurance held at such meeting of members. * * * That under the law and the by-laws of the company that the directors holding office at the time said meeting was held, William E. Hughes, J. A. Lott, Edith Hughes, Hubert W. Green, and William E. Hughes, Jr., are entitled to remain in office as hold-over directors until their successors are duly elected and have qualified, and no such successors have been duly elected and qualified."

The evidence contained in the statement of facts of 340 pages indicates that the identity of those who actually voted at the meeting was not a matter impossible to determine upon the trial of the case before the court, although the managers of the election may not have had sufficient information at the time of the election to identify those voting as policyholders of

the company. The trial judge, however, recited in his findings that "after the conclusion of all of the evidence and during the argument of counsel, that Mr. Woodville J. Rogers, attorney (for Hyatt et al.), in response to a question from the court relative to the amount of insurance held by the persons voting at said meeting, stated in open court that it would be impossible from the evidence to determine the amount of such insurance held by such persons who voted. Mr. Hubert Green (atttorney for Hughes et al.) in response to a similar question replied that he did not know."

The by-laws (Article VIII) provide for a "majority vote of members present"—a per capita vote. The statute (Article 4789) requires that the "by-laws shall provide for annual members' meetings, in which each member shall be entitled to vote, only in person, the amount of insurance held."

This statute is effective whether actually written into a by-law or not. It controls over any by-law provision conflicting therewith. The statute and by-laws construed together mean that a member must be present to vote and that he votes the amount of insurance held by him. A majority of the amount of insurance actually voted controls. There may be some uncertainty with reference to the phrase in the by-law providing that a "majority vote of *members present*" shall control. But when considered with the statute which places the vote on "the amount of insurance held," we think it reasonably clear that the true meaning is that expressed above,— more than half in the amount of insurance actually voted. State ex rel. Wilkinson v. Self, Tex.Civ.App., 191 S.W.2d 756.

The evidence discloses that several types of policies are issued by the Company, such as Health and Accident, Group Life Insurance Policies, Hospitalization Policies, etc. Some policies carry weekly benefit provisions. Some provide for lump sum payment in event of death. Others provide double indemnity in cases of accidental death. This leads to some difficulty in determining the "amount of insurance held" by the holders of various types of policies. In view of this situation, we conclude that the most equitable construction of the statute as among the holders of various types of insurance would be to determine the "amount of insurance held" and voting power in accordance with the annual premium requirement of the particular policy held by the member voting. For instance, the vote of a member holding a policy having an annual premium requirement of $12.00, would be weighed by 12. If a voter were one of a group of six holding a group policy with a $12.00 annual premium requiremet, his vote would be weighed by 2.

The evidence affords no basis for determining the outcome of the questioned election in accordance with the statute as above construed. The vote was taken upon a per capita basis, and at the time the election was held and the result thereof declared, no objection was made to this basis, and no one insisted that the result should be determined on the basis of "the amount of insurance held."

Under these circumstances, the substantial question involved upon this appeal may be stated as follows: Under the pleadings of this case, will the finding that it can not be ascertained from the evidence adduced upon the hearing which one of the contending groups received the majority vote of the "amount of insurance held" by those voting, support the injunction?

Appellants make a broad assault upon the injunctive order and refer us to the case of Bledsoe v. Grand Lodge of United Brothers of Friendship, 53 S.W.2d 73, 74, wherein the Fort Worth Court of Civil Appeals said:

"In 14a Corpus Juris, p. 63, the following is said: 'While the contrary has been held, the general rule is well settled in most jurisdictions that a court of equity has no power or jurisdiction to entertain a bill merely for the purpose of reviewing a corporate election; nor to oust parties in possession who claim to have been elected.' See, also pages 76 to 77 of the same volume.

"And in 32 Corpus Juris, p. 240 the following is said: 'It is not the province of equity to decide the right to an office although it may do so as an incident to matters otherwise within its jurisdiction; and while there is some authority to the con-

trary, it has very generally been held that, where an injunction to prevent an officer from acting as such is really to test the validity of the election, it will be refused.'

"To grant the temporary writ of injunction prayed for by the plaintiff would clearly be in contravention of the well-established rule announced in those authorities; and also in violation of the further rule in equity announced in 32 Corpus Juris, p. 26: 'If the issuance on preliminary application of an injunction mandatory in nature will have the effect of granting to the complainant all the relief that he could obtain upon a final hearing, the application should be refused except in very rare cases, and then only where complainant's right to the relief is clear and certain.' "

Upon authority of the Bledsoe case it is stated by Hildebrand that:

"A court of equity will not primarily take jurisdiction to determine the legality of an election of directors or to remove a director who is in possession of the office. It will inquire into the regularity of the election, or the right of the person to the office, only when the question arises incidentally and collaterally in a suit of which the court has rightful jurisdiction, and when the grant of the relief depends upon its decision." 2 Hildebrand, Texas Corporations, 459, § 542.

In Corpus Juris Secundum it is stated that:

"Since all questions relating to the validity of corporate elections are determinable at law, equity, according to most authorities, will not entertain proceedings for the purpose of reviewing a corporate election, except where the remedy at law is plainly inadequate; but it will review such election when the question of its validity arises collaterally in a suit of which the court has jurisdiction on other grounds." 19 C.J.S., Corporations, § 725, p. 54.

Appellees' position is that there was in legal effect "no election" and that "the injunction was obtained by the company and its directors to prevent interference with its business and the management by its existing directors, as hold-over directors under Article III of the by-laws, because no successors have been 'duly elected and qualified.' " It is apparent that the issuance of temporary writ and the granting of final relief prayed for (the permanent injunction) would have the effect of perpetuating the hold-over directors in office, at least until the next annual meeting of the members of the corporation. Appellees' argument hinges upon the question of "no election."

As shown by the trial judge's findings, the by-laws of the Mercury Company, in accordance with statute, provided for an annual meeting of policyholders. Some notice of this annual meeting was given. Policyholders and perhaps other persons did assemble. An election was held, although it was attended by certain disorders and irregularities. A result of the election was declared. No objection was made at the time as to the per capita basis of voting employed. This being true, a reviewing court is not at liberty to disregard what occurred, and proceed as if no meeting or election had been held.

An "election" having been held, a judicial review thereof must necessarily result in the seating of the Hyatt directors upon a finding that they received the majority vote of the "amount of insurance held," or the seating of the Hughes directors upon a finding that they received the majority vote of "the amount of insurance held," or the ordering of a new election upon a finding that it is impossible to tell who received a majority vote of the insurance held.

A suit based upon the contention that the results of an election can not be ascertained is essentially a suit to determine the legality of an election. Its purpose is to set aside the declared results of an election.

Any person dissatisfied with the declared result of the election and contending that he and not the declared victor actually received the greatest number of legal votes has a complete and adequate remedy at law by a suit in the nature of quo warranto or a suit for office. 19 C.J.S., Corporations, § 725, p. 54. In such a case any equitable relief granted by way of injunction must be incidental and ancillary to the main legal relief sought.

Similarly, in a case wherein it is established that the true results of a questioned corporate election can not be ascer-

tained by judicial review because of disorders and irregularities accompanying the election, the remedy is the ordering of another election by way of mandamus or similar order. 18 C.J.S., Corporations, § 558, p. 1270, 38 C.J. 798, or, in extreme cases, the equitable power may be invoked to supervise and control said election. 2 Hildebrand, Texas Corporations, 459, § 542, 13 Am.Jur. 544, § 509. Temporary injunctive relief must be incidental or ancillary thereto.

We disapprove of the trial court's finding or conclusion that "there was in effect no election at all." We hold that appellees' suit is essentially an attempt to determine the legality of a corporate election, and that such relief can not be obtained by means of a temporary injunction ancillary to a prayer for relief by way of permanent injunction. We think that the authorities cited by appellant and hereinabove referred to control this case.

The order appealed from is reversed and the cause remanded to the trial court with instructions to vacate the temporary injunction heretofore granted. The vacation of the temporary injunction shall not be effective until the rendition by the trial court of the order herein directed.

Reversed and remanded with directions.

### On Motions for Rehearing.

PER CURIAM.

We have considered both appellants' and appellees' motions for rehearing. We adhere to holdings expressed in the original opinion. In view of our holding that an "election" was held at the policyholders' meeting of January 20, 1947, a temporary injunction ancillary only to a prayer for a perpetual injunction must be vacated. We overrule appellees' motion for rehearing.

We have come to the conclusion that the part of our order directing that the vacation of the temporary injunction should not become effective until so ordered by the trial court is unauthorized by the record. While we may prevent the dissolution of a temporary injunction pending motion for rehearing, it is doubtful if we may extend the operation of a trial court's injunctive order beyond such time. Rule 434, R.C.P.

Accordingly, appellants' motion is granted; the order appealed from is reversed and judgment here rendered vacating the temporary injunction.