**HUGHES v. SANDERS, District Judge et al.**

**No. 12361.**

Court of Civil Appeals of Texas. San Antonio.

Oct. 24, 1951.

212

Green & Rosson, Wheeler, Gresham & Davis, San Antonio, for appellant.

Oliver & Peace, and Woodville J. Rogers, all of San Antonio, for appellees.

POPE, Justice.

This is an original proceeding brought under Article 1824, T.R.C.S., Vernon's Ann. Civ.St. art. 1824, seeking a writ of mandamus ordering the Hon. P. C. Sanders, District Judge, and others to proceed with the trial of a case which by the trial court's order has been abated pending the trial of another suit that was filed earlier. Both suits are pending in the same court. The nature and history of the two actions will be briefly summarized.

First suit: Leonard Hyatt sued William E. Hughes, the Mercury Life and Health Company, and others, and alleged that on July 28, 1944, they breached his ten-year general agency contract dated September 10, 1943. It was further alleged that on May 6, 1944, Mercury executed a second general agency contract with Hughes, and that Mercury in its actions of breaching the Hyatt contract and in making the new Hughes contract had no corporate power or authority to do either. The power of the corporation concerns both Hyatt's and Hughes' contracts. However, the pleadings allege the date of the breach of Hyatt's contract to be in July and the date of the execution of the Hughes' contract to be in May, about two months earlier, and the power of the corporation may be some different on those two dates. Yet the issue

bearing on which of the two contracts was effective, rested on the powers of the corporation's officers and directors to do what they did as to each contract.

Subsequent events resulted in a re-alignment of parties. Hyatt was ousted from the operation of Mercury's affairs as general agent when the Hughes contract was made, but on January 7, 1947, was re-instated through the action of an annual policyholders' meeting. Hyatt v. Mercury Life & Health Co., Tex.Civ.App., 202 S.W. 2d 320. Hughes, following that meeting, was ousted. Hyatt then, as general agent, took over the office and affairs for Mercury, and dismissed Mercury from his suit. Hughes on the other hand had been Mercury's ally in defending the Hyatt action, but now became the actor against Mercury as well as Hyatt by way of a cross-action. The cross-action alleged the invalidity of the election of officers in the meeting on January 20, 1947, by reason of a conspiracy and a fraudulent election, and sought damages by reason of the breach of the Hughes general agent's contract. It is seen that Hughes now was asserting an action against his former ally, Mercury.

Second Suit: About one year after filing the cross-action and while the Hughes cross-action was still pending in the Hyatt suit, Hughes commenced a separate action in the same court against both Hyatt and Mercury, and others. That second suit alleged the Hughes general agency contract dated May 6, 1944, its wrongful cancellation in January, 1947, and prayed for damages against both Mercury and Hyatt for breach of the contract. This suit also sought damages against Hyatt for tortiously inducing its breach. Mercury and Hyatt answered by saying that the officers and directors of Mercury did not have the power to make the Hughes contract in the face of the pre-existing Hyatt contract, and also that Hughes had breached his contract. Hughes obtained a setting for his second-filed suit and Mercury and Hyatt urged their plea to abate the suit until the first-filed Hyatt suit was tried. This plea was sustained and the case abated until the former suit was tried. Immediately before the plea in abatement, filed in the second suit, came on

to be heard, Hughes sought and obtained leave to dismiss his cross-action against Mercury in the first suit. The granting of this dismissal effectively cut Mercury loose as a party, and it ceased to be a party in that action, though, at different stages of that proceeding, it had been aligned first with Hughes and later with Hyatt. Mercury did continue as a joint defendant along with Hyatt in the second suit.

From the standpoint of parties, Mercury is a stranger to the first suit and is a defendant in the second. From the standpoint of the causes of action, the issue of Mercury's power to cancel the Hyatt contract and execute the Hughes contract thereafter is common to both suits. The first suit is a claim by Hyatt for damages arising between May 6, 1944, the date Hyatt's contract was cancelled and he was ousted, and January 7, 1947, the date he was reinstated. It also asserts tort liability of Hughes. The second suit is a claim by Hughes for damages arising after January 7, 1947, the date his contract was cancelled and he was ousted. The second suit, unlike the first, contains the pleading that Hyatt tortiously induced the breach of Hughes' contract.

The theory of Hyatt's and Mercury's plea in abatement is that the issue of Mercury's corporate authority lies at the bottom of both the Hyatt and the Hughes contract, that it was first raised in the first suit, and that should it be proved that Mercury had no authority to cancel the Hyatt contract and also no authority to execute the Hughes contract, Hughes' second suit would be defeated. Upon such theory the lack of authority to make the Hughes contract would decide the issue not only in the first case but also in the second suit. Hyatt and Mercury state that the first suit should be tried and, in the event of a finding that the Hughes contract was executed without corporate authority, the second suit would be avoided. On the other hand, if there should be a finding that Mercury did have authority to make the Hughes contract, then Hughes could proceed with his second suit, so Mercury could assert its defense that Hughes was the one who breached the contract.

Mercury, if this could be accomplished, would be in the enviable position of being able to win the second suit in which it is a party, by compelling a trial of a case between two other parties and in which case it is not a party.

In other words, Mercury, though not a party to the first suit, could win in a suit in which it is a party. Hughes, on the other hand, would be put to two trials to win against Mercury. We do not think a rule sound that permits Mercury to win without a trial and requires Hughes to try two cases in order to prevail against Mercury. At bottom this is the reason for the rule that the parties to the two suits should be substantially the same when a plea in abatement is sustained. Otherwise, as in this instance, Mercury can win without a trial, but can lose only after its adversary has been put to two trials.

A non-party ordinarily protests the bindingness of any finding upon him in a proceeding in which is is not present, can not adduce evidence within its knowledge, can not be represented, or perhaps not even know when the trial is conducted, all of which are good reasons for the rule that the parties must be substantially the same in order to abate an action. Here, however, Mercury desires that the first suit be abated, not for these reasons, but, upon analysis, because an adverse judgment can be no judgment against it; whereas a favorable judgment can wipe out the claim against it. Mercury would receive all advantages with no risks, possibly a judgment without Mercury ever submitting to a trial, a victory without a contest. We do not think this is the office of a plea in abatement. We think the true situation for a plea in abatement would be illustrated better were Mercury to get into the first suit as a party where it would then present an instance of similar parties disputing similar issues.

We do not think this is a case wherein the parties or issues are so similar as to support the plea in abatement, and the sustaining of the plea has the peculiar disadvantage of according one of the parties an unequal advantage over the other. Respondents have cited us to many cases wherein the parties in two actions were the same, though sometimes reversed, but those hardly apply in this instance where a party is totally absent from one of the suits.

Respondents especially rely upon the principle announced in Landa v. Isern, 141 Tex. 455, 174 S.W.2d 310, wherein one party was estopped from maintaining a second suit against a party successful in a former suit, insofar as issues were actually and necessarily litigated in the former suit. An examination of that case will reveal, however, that both Landa and Isern were parties in the two suits wherein the issues were litigated. If Mercury were common to both suits that precedent may be analagous. There is not such identity of parties and issues here as will support the plea in abatement. McGurdy v. Gage, 123 Tex. 558, 69 S.W.2d 56; Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063; Benson v. Fulmore, Tex.Com.App., 269 S.W. 71; Holcombe v. Hanbury, Tex.Civ.App., 63 S.W.2d 735; Northwest Engineering Co. v. Chadwick Machinery Co., Tex.Civ.App., 93 S.W.2d 1223.

We are not unmindful that the court may grant a plea in abatement in the interest of promoting a more orderly disposition of cases which have interrelated issues, and this is true even though there is not a strict similarity of parties and issues. North Texas Coach Co. v. Morten, Tex.Civ.App., 92 S.W.2d 263. We do not understand how the abatement of this suit will make for a more orderly disposition of these cases since it is already apparent that separate trials will create complexities not necessary to the solution of the merits of the case. Res judicata, stare decisis, estoppel, the theory of the case, are some of those creations already injected into the proceedings which could all be avoided by the trial court's consolidation of the two actions, both of which are pending in the same court. Holt v. Uvalde Co., Tex.Com. App., 269 S.W. 73.

The trial court is directed to proceed with the trial of cause No. F—48983, without regard to the plea in abatement, in accord with the principles and usages of the law. This Court does not order that

it be tried prior to cause No. F–33576, that being a matter over which the trial court may exercise its own discretion in the orderly control of its docket.

We assume the district judge will act in accordance with the views herein expressed, and the writ of mandamus will not actually issue until it is made known to us that he does not propose to do so.

Writ of mandamus conditionally granted.