MERCURY LIFE & HEALTH COMPANY
et al., Appellants,

v.

William E. HUGHES, Appellee.

No. 12623.

Court of Civil Appeals of Texas.

San Antonio.

Sept. 22, 1954.

Rehearing Denied Oct. 20, 1954.

Culpepper & Spilman, McAllen, for appellant.

John Peace, Edward Penshorn, Robert Sawtelle, Lang, Byrd, Cross & Ladon and Cox, Patterson & Smith, San Antonio, for appellants.

Hubert W. Green and Boyle, Wheeler, Gresham & Davis, San Antonio, for appellee.

W. O. MURRAY, Chief Justice.

This is a suit by William E. Hughes against Mercury Life & Health Company, Mercury United Life Insurance Company, both being Texas insurance corporations, Leonard Hyatt, H. C. Plumly, T. H. W. Vordenbaum, C. B. Fulton and James A. Savage, seeking to recover damages for the breach of a contract wherein William E. Hughes was made general manager of the Mercury Life & Health Company for a period of ten years, with the privilege of renewal for another ten years at the option of William E. Hughes.

The trial was to a jury and, based upon answers to special issues, judgment was rendered in favor of William E. Hughes against the defendants jointly and severally in the sum of $226,779.63. Exemplary damages in the sum of $50,000 in favor of William E. Hughes against Leonard Hyatt, H. C. Plumly and James A. Savage were also awarded. All of the defendants have appealed.

The date of the alleged contract was May 6, 1944. Appellants defended principally upon the ground that the contract was void and unenforceable as being against public policy, because (1) it was executed by virtue of a contractual arrangement to control the management of Mercury Life & Health Company in perpetuity, and was voted at a

directors' meeting in which all persons voting had a direct, personal financial interest in the benefits of the contract, and (2) it purported to make of appellee virtually the company for a period of twenty years, thus precluding the management of the company's affairs by its board of directors and its policyholders.

A controversy between William E. Hughes and Leonard Hyatt as to the management of Mercury Life & Health Company has been going on for some time. See Hyatt v. Mercury Life & Health Company, Tex.Civ.App., 202 S.W.2d 320; Hyatt v. Hughes, Tex.Civ.App., 221 S.W.2d 998; Hughes v. Sanders, Tex.Civ.App., 243 S.W.2d 211. The facts leading up to the present phase of this controversy are set out in great detail in the opinion of this Court in Hyatt v. Hughes, Tex.Civ.App., 221 S.W.2d 998, and reference is here made to that opinion for a full statement of such facts.

In view of the full statement in our former opinion, we will here only briefly state such facts as we deem absolutely necessary.

In 1943 Leonard Hyatt was operating the Mercury Life & Health Company, hereinafter referred to as Mercury, under a management contract which virtually made him the company. On November 30, 1943, Hyatt sold to Hughes a 51% interest in Mercury, retaining for himself a 49% interest. Under this contract of sale Hyatt was to be the president of the company and Hughes chairman of the board of directors. At all annual policyholders' meetings Hughes was to have the privilege of voting by proxy 51% of the policyholders and Hyatt 49%. Hughes had the privilege of naming three directors, Hyatt two. This arrangement was to last as long as the company continued.

After this contract was executed Hughes suggested that the general management contract which stood in the name of Hyatt should be changed to his name, inasmuch as he held the controlling interest in the company. This suggestion was followed and on May 6, 1944, a contract was entered into by the board of directors giving to Hughes the power to run the company as though he was the actual owner of it. This contract was similar in every respect to that formerly held by Hyatt. Hughes entered into a separate agreement with Hyatt to the effect that as soon as his contract was approved by the State Board of Insurance Commissioners he would convey to Hyatt a 49% interest in the contract. Hughes' contract was approved by the board, but he did not convey the 49% to Hyatt. This failure resulted in the suit of Hyatt v. Hughes, Tex.Civ.App., reported in 221 S.W.2d 998. In that case we hold, among other things, that Hyatt's contract was not sufficiently complete, definite and certain to support his suit for a breach thereof.

After Hyatt had lost his suit against Hughes, he and others attended a policyholders' meeting on January 20, 1947, and were successful in electing directors of Mercury who were favorable to him and unfavorable to Hughes. Hyatt v. Mercury Life & Health Company, Tex.Civ.App., 202 S.W.2d 320. These new directors cancelled Hughes' contract, which under its terms would have otherwise continued for some seventeen more years, and this suit for damages by Hughes for such breach followed.

Appellants' first point is that the contract upon which appellee's suit is based is void and unenforceable, being in violation of the public policy of this State.

There were four directors present when the contract of May 6, 1944, was entered into with Hughes. These four directors were, William E. Hughes, his wife, Edith C. Hughes, James A. Savage and Leonard Hyatt. Each one of these directors had a direct personal financial interest in the letting of this contract. Hughes and his wife were to receive 51% of the net profits of the company, Hyatt was to receive the remaining 49%, and Savage was to ultimately receive $50,000 for advertising the company over his radio station located in Monterrey, Mexico. The contract of May 6, 1944, was simply the putting into effect the agreement of November 30, 1943, and

by referring to this latter contract the financial interest of each director is immediately apparent.

■ The rule is well settled in this State that a contract entered into by the directors of a corporation, all of whom have a personal financial interest in such contract, is against public policy and is unenforceable against the corporation. There is a fiduciary relation existing between directors and the corporation which they represent, and where they have a direct personal financial interest in the letting of a contract there is no one to represent the corporation which is a separate legal entity. San Antonio St. R. Co. v. Adams, 87 Tex. 125, 26 S.W. 1040; Scott v. Farmers' & Merchants' National Bank, 97 Tex. 31, 75 S.W. 7; Greathouse v. Martin, Tex.Civ. App., 91 S.W. 385; Hendricks v. Wall, Tex.Civ.App., 277 S.W. 207; Withers v. Edwards, 26 Tex.Civ.App. 189, 62 S.W. 795; Funkhouser v. Copps, Tex.Civ.App., 174 S.W. 897; Roberts v. San Jacinto Shipbuilders, Tex.Civ.App., 198 S.W.2d 488; Dunagan v. Bushey, Tex.Civ.App., 263 S.W.2d 148; Hildebrand on Texas Corporations, Vol. 1, § 133, p. 344.

■■ Appellee contends that while the above rules may apply to ordinary corporations, they do not apply to mutual insurance companies such as Mercury, (1) because of the statute against issuing certificates of stock, declaring dividends or paying profits, § 5, Chapter CXI, General Laws, 28th Legislature, p. 175, Vol. 12, Laws of Texas, and (2) because the statutes regulating these companies delegate in effect all of the functions of the board of directors to the Board of Insurance Commissioners. We do not agree with these contentions. It is true that the statutes provide that no stock certificate shall be issued and no dividends or profits paid, and at least 60% of all assessments must be paid into a mortuary fund and the remaining 40% may be applied to paying operating expenses, but it does not follow that the policyholders have no interest in the expense fund of the company. There is nothing to prevent the paying of more than 60% of the premium into the mortuary fund and thus build up a greater reserve and make the policies more valuable. Furthermore, the fact that 40% may be expended for operating expenses does not mean that 40% must be so expended. While the policyholders do not receive dividends, they get other equally valuable benefits. It is the duty of the directors to operate the company as economically as possible and furnish insurance to its policyholders as near actual cost as possible. Therefore, they should not be entering into contracts in which they have a direct personal financial interest. Appellee cites no cases holding that the public policy as to directors of ordinary corporations being disqualified to enter into contracts in which they have a direct personal interest, should not be applied to mutual assessment insurance corporations such as Mercury, and we know of no such authorities.

■ The fact that the Board of Insurance Commissioners has strict supervision over such companies as Mercury does not relieve the Board of Directors of their responsibility in the first place to administer the affairs of the company in an honest and economical manner. Many State and Government Commissioners are given strict supervision over many corporations charged with a public interest, but such fact does not relieve the governing bodies of such corporations from all responsibility to those for whose benefit such corporations were created.

■ We are much impressed with appellants' contention that the contract herein sued upon was void because it took from future directors and future policyholders of Mercury all right to have a voice in the management of the company, but inasmuch as we have held that it was void because passed by directors, all of whom had a direct personal financial interest in the contract, we deem it unnecessary to discuss this contention. That part of the contract herein sued upon is executory and so long as it remains executory it is unenforceable.

Appellee further contends that the contract should be upheld upon the theory of ratification, adoption or estoppel. We overrule these contentions. This contract is unenforceable as being against public policy and cannot be ratified or adopted by the mere showing of partial performance, or that the corporation has accepted benefits under the provisions of the contract. Neither does estoppel apply. The court will not lend its aid in the enforcement of rights growing out of an illegal contract, but will leave the parties to the unlawful contract where it finds them. Roberts v. San Jacinto Shipbuilders Inc., Tex.Civ.App., 198 S.W.2d 488; Hildebrand on Texas Corporations, Vol. 1, § 133, p. 344; 10 Tex.Jur. § 330, p. 988; Greathouse v. Martin, supra; 13 Am.Jur. § 980, p. 932, and § 984, p. 939; ·United Order of Good Samaritans v. Meekins, 155 Ark. 407, 244 S.W. 439, 28 A.L.R. 89; 10 Tex.Jur. pp. 260, 261; 19 C.J.S., Corporations, § 966, p. 421.

The judgment is reversed and judgment here rendered that appellee take nothing.