**CITY OF STEPHENVILLE, Appellant,**

v.

**Jerry WALKER, Appellee.**

**No. 11–92–037–CV.**

Court of Appeals of Texas, Eastland.

Nov. 12, 1992.

Rehearing Denied Dec. 10, 1992.

---

Bettye S. Springer, Amy Nickell Jacobs, Haynes and Boone L.L.P., Fort Worth, Randy Thomas, Stephenville, for appellant.

Garry Lewellen, McMillan & Lewellen, Stephenville, R. John Cullar, Mills, Millar & Matkin, Waco, for appellee.

ARNOT, Justice.

 TEX.LOC.GOV'T CODE ANN. § 143.004 (Vernon 1988) governs a munici-

pality's election to adopt or repeal the civil service system. On January 21, 1989, the City of Stephenville adopted the civil service system, TEX.LOC.GOV'T CODE ANN. ch. 143 (Vernon 1988 & Supp.1992). On September 19, 1991, less than three years after its adoption, a petition was submitted to the Stephenville City Council to repeal the civil service system.

On the date of the election for repeal, Stephenville had 6,141 registered voters. A total of 1,607 votes were cast in the election to repeal: 946 for repeal and 661 against the proposal.

Jerry Walker is a Stephenville policeman. Walker filed a declaratory judgment seeking an interpretation of Section 143.004(e) which states "[i]f a majority of the *qualified voters* vote to repeal this chapter, this chapter is void in that municipality." (Emphasis added)

Walker argues that, in this context, "qualified voters" means registered voters. Walker contends that, to repeal the civil service system, it is necessary to receive a majority of the 6,141 possible votes, not the majority of the actual 1,607 votes cast. Stephenville argues that, as used in Section 143.004(e), a majority of "qualified voters" means a majority of the voters who actually voted in the repeal election. The facts were stipulated by the parties. Agreeing with Walker's construction, the trial court construed "qualified voters" to mean "registered voters." Stephenville appeals.[1] We reverse and render.

In its first point of error, Stephenville urges that the trial court erred in finding that Section 143.004(e) requires a majority of the registered voters to repeal Chapter 143,[2] the civil service system.

**1.** Although we have not addressed them individually, we have considered the amicus curiae briefs received from the Texas State Association of Fire Fighters; by the Texas Municipal League and the Texas City Attorneys Association; by the Cities of Corsicana, Plainview, Plano, Texarkana, Tyler, Waxahachie, and Wichita Falls; and by CLEAT [Combined Law Enforcement Association of Texas].

**2.** Section 143.004 provides in part:

(a) A municipality may hold an election to adopt or repeal this chapter as provided by this section.

(b) If the governing body of the municipality receives *a petition* requesting an election that is *signed by a number of qualified voters* of the municipality *equal to at least 10 percent of the number of voters who voted in the most recent municipal election, the governing body shall order an election* submitting to the voters the question of whether this chapter should be adopted.

When construing a statute, the courts must read the words according to their ordinary meaning unless a contrary intention is apparent from the context. *Taylor v. Firemen's and Policemen's Civil Service Commission of the City of Lubbock*, 616 S.W.2d 187 (Tex.1981). Applying its ordinary meaning, we hold that a majority of "qualified voters" means those qualified voters who voted in the election. See *Wallace v. Ranger Hospital District*, 474 S.W.2d 568 (Tex.Civ.App.—Eastland 1971, writ ref'd n.r.e.); *Yeary v. Bond*, 384 S.W.2d 376 (Tex.Civ.App.—Amarillo 1864, writ ref'd n.r.e.); *State ex rel. Wilkinson v. Self*, 191 S.W.2d 756 (Tex.Civ.App.—San Antonio 1945, no writ); *Bradshaw v. Marmion*, 188 S.W. 973 (Tex.Civ.App.—El Paso 1916, no writ).

First, Walker argues that the legislature has defined "qualified voter" in TEX. ELEC.CODE ANN. § 277.0021 (Vernon Supp.1992) which provides that:

> [A] reference in a law outside this [Election] code to "qualified voter" in the context of eligibility *to sign a petition* means "registered voter." (Emphasis added)

Section 143.004(e) states that, to repeal the civil service system, a petition must be secured with the signature of at least 10 percent of the "qualified voters" of the municipality. In this context, "qualified voter" means "registered voter" under Section 277.0021. Walker would have this court apply the same meaning to "qualified voters" in the last sentence of Section 143.004(e). We decline to make this application. By definition, Section 277.0021 is limited to eligibility to sign petitions. Furthermore, one must look at the entire act in determining the legislature's intent with respect to a specific provision. *Taylor v. Firemen's and Policemen's Civil Service Commission of the City of Lubbock*, supra.

Second, Walker argues that the term "qualified voters" under Section 143.004(e) does not have the modifying clause, "who voted in the most recent municipal election," as in Section 143.004(b). Therefore, by absence of the modifying clause, Walker contends that the legislature intended "qualified voters" to mean "registered voters" for a repeal of the system. We disagree with Walker's contention. By construing the term "qualified voters" to mean those "voters who voted in the most recent municipal election," all uses of the term are consistent throughout the entire statute except where expressly defined by the legislature in reference to Section 277.0021. *City of Dallas v. Watkins*, 651 S.W.2d 923 (Tex.App.—Dallas 1983, no writ); *Walker v. Koger*, 99 S.W.2d 1034 (Tex.Civ.App.—Eastland 1936, writ dism'd).

Third, Walker argues that the legislature intended for the votes required for adoption and repeal to be different standards in order to protect those agencies subject to the civil service system from political pressures. We disagree with Walker's interpretation of the legislature's intent. The safeguard against political pressures is provided for by requiring the signatures of 10 percent of the "registered voters" for a petition to call an election for repeal of the civil service system. As observed in *State ex rel. Wilkinson v. Self*, supra:

> If appellants' construction of the statute [majority of registered voters needed for repeal of the system] be accepted, the elections provided for therein would in many instances settle nothing. It is common knowledge that in most elections, all those legally qualified to vote do not actually cast their ballots.

To accept Walker's construction, a qualified voter who did not vote in the election would have been considered to have voted against the repeal. Surely, the legislature

---

(c) *If a majority of the votes received in the election* are in favor of adoption of this chapter, the governing body shall implement this chapter.

(e) If the governing body of a municipality that has operated under this chapter for at least one year *receives a petition requesting* an election *to repeal this chapter* that is *signed by* at least 10 percent of the qualified voters of the municipality, the governing body shall order an election submitting to the voters the question on whether this chapter should be repealed. *If a majority of the qualified voters vote to repeal this chapter, this chapter is void* in that municipality. (Emphasis added)

intended only for a vote which was actually cast to be considered.

 Fourth, Walker urges that his Exhibit Nos. 1, 2, and 3 are evidence of the legislative intent to support his construction that "qualified voters" means "registered voters." Exhibit No. 1 is a copy of the introduced version of House Bill 1642, 71st Leg., R.S. (1989); Exhibit No. 2 is a copy of the introduced version of House Bill 1264, 72nd Leg., R.S. (1991); and Exhibit No. 3 is a copy of the original bill analysis prepared for the House Committee on Urban Affairs concerning Tex. HB 1642, 71st Leg., R.S. (1989). In its Points of Error Nos. 6, 7, and 8, Stephenville complains that the trial court erred in admitting and considering these exhibits. We disagree with Stephenville's arguments. TEX.GOV'T CODE ANN. § 311.023(3) (Vernon 1988) [3] authorizes the court to consider these matters. Accordingly, Points of Error Nos. 6, 7, and 8 are overruled.

House Bill 1642 and House Bill 1264 both sought to clarify the term "qualified voters." House Bill 1642 added the modifying phrase "voting in said election" to Section 143.004(e), and House Bill 1264 provided that "[i]f a majority of the votes received in the election are in favor of repealing." The original bill analysis, Exhibit No. 3, stated:

> This bill [1642] would change the requirements for the voters of a municipality to repeal the State Fire Fighters' and Police Officers' Civil Service law to equal the requirements for voting to adopt the law.

 Walker argues that this evidence supports his construction of the statute. Evidence that the legislature sought to clarify the term "qualified voters" is not proof that the legislature originally intended the term to mean "registered voters." The term "qualified voters" already had a

well-defined court construction as used in other statutes at the time Chapter 143 was passed. See *Wallace v. Ranger Hospital District,* supra; *Yeary v. Bond,* supra; *State ex rel. Wilkinson v. Self,* supra; *Bradshaw v. Marmion,* supra. In contrast to the opinion of the author of the bill analysis, we hold that the proposed bills (1642 and 1264) would have clarified the term "qualified voters" not changed it.

Appellant's first point of error is sustained. Because it is dispositive of the case, we do not reach appellant's other points which are not previously addressed.

The judgment of the trial court is reversed, and judgment is rendered construing Section 143.004(e) so that the civil service system may be repealed by a majority of the qualified voters who voted in the repeal election.

---

**3.** TEX.GOV'T CODE ANN. § 311.023 (Vernon 1988), the code construction act, provides:

In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the:

(1) object sought to be attained;

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) common law or former statutory provisions, including laws on the same or similar subjects;

(5) consequences of a particular construction;

(6) administrative construction of the statute; and

(7) title (caption), preamble, and emergency provision.